IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| HUNTER ENGINEERING COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. _____ |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| FASTLIGN, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

COMES NOW Plaintiff Hunter Engineering Company ("Hunter"), by and through their attorneys, and for their Complaint against Defendant FastLign LLC ("FastLign"), alleges as follows:

## THE PARTIES

1. Hunter is a Missouri company having a principal place of business at 11250 Hunter Drive, Bridgeton, MO 63044.

2. Upon information and belief, FastLign is a Delaware limited liability company that is owned and operated by Opus Inspection, Inc. ("Opus") and which has a principal place of business at 7 Kripes Road, East Granby, CT 06026.

## NATURE OF THE ACTION

3. This Complaint seeks declaratory judgment determinations that Hunter does not infringe any claims in either U.S. Patent No. 9,377,379 ("the '379 patent") or U.S. Patent No. 9,677,974 ("the '974 patent").

4. By letter dated June 8, 2018, attached as Exhibit A, Defendant FastLign's attorney asserted that FastLign is the owner of both the '379 patent and the '974 patent.

5. The '379 patent is entitled "Method, System and Apparatus for Assessing Wheel Condition on a Vehicle." It issued on June 28, 2016. A true and correct copy of the '379 patent is attached as Exhibit B.

6. The '974 patent is a continuation of the '379 patent and is also entitled "Method, System and Apparatus for Assessing Wheel Condition on a Vehicle." It issued on June 13, 2017. A true and correct copy of the '974 patent is attached as Exhibit C.

## THE SUBSTANTIAL DISPUTE BETWEEN THE PARTIES

7. In its June 8, 2018 letter, FastLign accused Hunter of infringing the '379 and '974 patents, specifically stating:

> FastLign LLC is the owner of United States Patent Nos. 9,337,379 B2 issued June 28, 2016, and 9,677,974 B2 issued June 13, 2017, both invented by Keith Lee and entitled Method, System and Apparatus for Assessing Wheel Condition on a Vehicle (hereinafter referred to as "Subject Patents"). The purpose of this letter is to provide you with notification under 35 U.S.C. § 287(a) that the subject patents are being infringed and will continue to be infringed under 35 U.S.C. § 271 by the making, using, selling, and offering for sale by Hunter Engineering Company of its drive through wheel condition sensing system branded Quick Check Drive.

Exhibit A.

8. On information and belief, FastLign is controlled by Opus Inspection. In a September 14, 2016 press release (Exhibit D), Opus Inspection announced its acquisition of "FASTLIGN®" technology, and its formation of a new company—Fastlign LLC—in conjunction with BanaLogic, Inc. (which the press release asserts was the developer of FASTLIGN®). Opus's webpage further touts FastLign, including via a link to a brochure and a YouTube video. *See* Exhibit E.

2

9. In addition to its activities regarding FastLign, beginning in 2007 Opus implemented the State of Missouri's Gateway Vehicle Inspection Program. Through 2017, those operations include 1 million inspections performed annually, 900,000 certifications issued annually, 812 vehicle test lanes, 4,200 vehicle inspectors, fully automated inspection systems, real-time communication of all inspection-related data with all inspection lanes, and integrated safety inspection software. Exhibit F.

10. Prior to the June 8, 2018 letter, FastLign had engaged in repeated contacts with Hunter regarding the technology in Hunter's accused Quick Check Drive™ system and Hunter's alleged infringement of the '379 patent and the '974 patent.

11. On August 17, 2017, three high level individuals with FastLign attended a meeting at Hunter's facilities in Bridgeton, Missouri. Those attendees were Brian Herron (President of Drew Tech), John Bradley (Vice President of Sales at Opus), and Hugh Atkins (Sales Manager at Drew Tech). On information and belief, Drew Tech is a division of Opus. The meeting was also attended by senior personnel at Hunter: Nick Colarelli (Executive Vice President); Tim Strege (Vice President–Research and Development); Kaleb Silver (Senior Product Manager); Don Glaser (Product Manager); and Ryan Frisch (Research and Development Manager–Electrical Engineering).

12. The August 17, 2017 meeting lasted approximately 6 hours. During that meeting, the parties discussed FastLign's system, the "FASTLIGN Touchless Alignment System" (hereinafter "the FASTLIGN system").

13. The FASTLIGN system is a touchless tire tracking system for vehicle tires. Its purpose is to identify issues with the alignment of a vehicle without the need for an operator or wheel clamps, while the vehicle is driven past the inspection apparatus. According to Opus's

website, "FASTLIGN employs advanced laser and optical technology to map a high-resolution profile of a vehicle's wheels as they roll past two towers, analyzing each individual tire's direction of travel and relationship to the other three. A detailed report is instantly issued and streamed wirelessly to the FASTLIGN POS tablet or service adviser desk. This prompts immediate and natural conversations between your writers and your customers about their FASTLIGN results and the need for proper alignment." Exhibit E  A picture of the FASTLIGN system, taken from a brochure posted to Opus's website (Exhibit G), shows the following:



A demonstration of the FASTLIGN system is available at the following YouTube URL: https://www.youtube.com/watch?v=mJZxZtoxrAU.

4

14. The FASTLIGN system is in the same technology space as the '379 patent and the '974 patent. The Abstract to the '974 patent explains that the patent is directed to

> [a] method of assessing a condition of a wheel on a vehicle is provided and includes driving the vehicle in a generally longitudinal direction; contactlessly determining a distance to a first location on the wheel; contactlessly determining a distance to a second location on the wheel at a second time that is later than the first time; determining an indication of a tire-wearing angle for the wheel based on the distance to the first location and the distance to the second location; and outputting the indication of the tire wearing angle for the wheel.

Exhibit C. Claim 1 of the '974 patent is directed to a "method of assessing a condition of a wheel on a vehicle" that includes, among more detailed limitations, contactless determinations of distances to locations on a wheel in order to ascertain the tire wearing angle for the wheel. *Id*. Likewise, the '379 patent Abstract explains that patent is direct to methods of "assessing a condition of a wheel on a vehicle [that] involves contactlessly determining distance of a first location on the wheel from a fixed point not on the wheel at a first time while the vehicle is moving and contactlessly determining distance of a second location on the wheel from the fixed point at a second time after the vehicle has moved" in order to assess wheel alignment and wheel suspension. Exhibit B. Claim 1 of the '379 patent is directed a method "of assessing a condition of a wheel on a vehicle being driven past a sensor system" that involves, among other limitations, contactlessly determining distances to locations on the wheel to determine "an indication of a tire wearing angle." *Id*.

15. At the August 17, 2017 meeting, the technology in Hunter's Quick Check Drive™ vehicle inspection product was also discussed.

16. Among other functions, Hunter's Quick Check Drive™ system provides wheel alignment inspection automatically as the vehicle passes between two towers at the inspection

5

location. Technology embodied in Hunter's Quick Check Drive™ system is explained in more detail in U.S. Patent No. 9,779,560 (Exhibit H) and U.S. Patent No. 9,779,561 (Exhibit I).

17. Following the August 17, 2017 meeting, the parties engaged in further discussions over the course of several months. During these discussions, FastLign inquired as to whether Hunter would take a license to the '379 patent and the '974 patent. The discussions also included discussions of possible business cooperation between Hunter and FastLign to commercialize the Hunter Quick Check Drive™ system through FastLign channels.

18. Those discussions continued through May 24, 2018, when the parties held another meeting at Hunter's facilities in Bridgeton, Missouri. Attending for FastLign were Sandra McCulloch (CEO of Opus), Mr. Herron, and Keith Lee (FastLign Chief Engineer). Attending for Hunter were Mr. Colarelli, Mr. Strege, Mr. Silver, and Chip Hiemenz (Hunter's Director of Business Development). That May 24, 2018 meeting, which lasted approximately 4 hours, included discussions about the FASTLIGN system (discussed above), the Hunter Quick Check Drive™ system (discussed above), possible commercial opportunities between Hunter and FastLign, and a discussion concerning patents, including the '379 patent and the '974 patent. During that meeting, the FastLign representatives asserted that Hunter's Quick Check Drive™ system infringes the '379 patent and the '974 patent.

19. On June 1, 2018, Sandra McCulloch, Opus's CEO, and Nick Colarelli, Hunter's Executive Vice President, spoke by telephone, wherein Ms. McCulloch reiterated FastLign's position that Hunter's Quick Check Drive™ system infringes the '379 patent and the '974 patent.

20. Also on June 8, 2018, Ms. McCulloch, emailed Mr. Colarelli regarding a possible meeting in Ann Arbor, Michigan, wherein Ms. McCulloch again asserted that Hunter's Quick

6

Check Drive™ system infringes the '379 and '974 patents, including as one of the proposed agenda items: "FastLign to provide explanations of claim(s) where infringement is alleged."

## JURISDICTION AND VENUE

21. This is a Complaint for declaratory judgment relief under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*

22. Hunter seeks declaratory relief under 28 U.S.C. §§ 2201 and 2202.

23. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338, 2201, and 2202.  More particularly, and as explained above, this action presents a justiciable controversy based on FastLign's specific and directed allegations that Hunter infringes the '379 patent and/or the '974 patent.

24. This Court has personal jurisdiction over FastLign.  As explained above, FastLign's owner and operator, Opus, had continuous and systemic contact with Missouri through its involvement with the State of Missouri's Gateway Vehicle Inspection Program. Separately, FastLign has specifically directed its activities at Hunter, a resident of this District, through its letter (Exhibit A) alleging infringement of the '379 patent and the '974 patent, and by otherwise engaging in discussions with Hunter whereby FastLign has asserted Hunter infringes the '379 patent and '974 patent.  Further, Hunter's claims for declaratory relief stem directly from those allegations of infringement.  At least based on FastLign's repeated engagement and discussions with Hunter concerning the '379 patent and the '974 patent, this Court's assertion of personal jurisdiction is reasonable and fair.

# COUNT I

### (Declaratory Judgment of Noninfringement of U.S. Patent No. 9,337,379)

25. Hunter repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

26. Because Hunter's Quick Check Drive™ system operates in a way that is substantially different than the systems and methods claimed in the '379 patent, Hunter does not infringe and has not infringed, induced infringement of, or contributed to the infringement of any claim of the '379 patent ,either literally or under the doctrine of equivalents.

27. By way of example, and without limitation, Hunter's accused Quick Check Drive™ system does not infringe any of claims 1–10 of the '379 patent at least because Hunter's Quick Check Drive™ system does not "determin[e] an indication of a tire-wearing angle for the wheel" and does not "output[] to a user the indication of the tire wearing angle for the wheel," as required by each of those claims.

28. Further, by way of example, and without limitation, Hunter's accused Quick Check Drive™ system does not infringe any of claims 11–17 of the '379 patent at least because, Hunter's Quick Check Drive™ system does not "determine a tire-wearing angle for the wheel" and does not "output data to a user indicative of the tire wearing angle" as required by those claims.

29. Further yet, by way of example, and without limitation, Hunter's accused Quick Check Drive™ system does not infringe any of claims 18–20 of the '379 patent at least because Hunter's Quick Check Drive™  system does not "derive[] adjusted tire wearing angles" for any wheel, much less for "each of the first and second front wheels and each of the first and second subsequent wheels" as required by those claims.

30. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

31. A judicial declaration is necessary and appropriate so that Hunter may ascertain its rights regarding the '379 patent.

## COUNT II

### (Declaratory Judgment of Noninfringement of U.S. Patent No. 9,677,974)

32. Hunter repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

33. Because Hunter's Quick Check Drive™ system operates in a way that is substantially different than the systems and methods claimed in the '974 patent, Hunter does not infringe and has not infringed, induced infringement of, or contributed to the infringement of any claim of the '974 patent, either literally or under the doctrine of equivalents.

34. By way of example, and without limitation, Hunter's accused Quick Check Drive™ system does not infringe any of claims 1–10 of the '974 patent at least because Hunter's Quick Check Drive™ system does not "determin[e] an indication of a tire-wearing angle for the wheel" and does not "output[] to a user the indication of the tire wearing angle for the wheel," as required by each of those claims.

35. Further, by way of example, and without limitation, Hunter's accused Quick Check Drive™ system does not infringe claim 11 of the '974 patent at least because Hunter's Quick Check Drive™ system does not "deriv[e] adjusted tire wearing angles" for the wheels, much less for "each of the first and second front wheels and each of the first and second subsequent wheels."

36. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

37. A judicial declaration is necessary and appropriate so that Hunter may ascertain its rights regarding the '974 patent.

## DEMAND FOR JURY TRIAL

38. Hunter demands a trial by jury for all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Hunter prays for the following relief:

A. A declaration that Hunter does not and has not infringed any claim of the '379 patent;

B. A declaration that Hunter does not and has not infringed any claim of the '974 patent;

C. An award of Hunter's costs pursuant to Fed. R. Civ. P. 54;

D. Any and all other available legal and equitable relief that the Court deems just and proper.

Dated: June 15, 2018                                    Respectfully Submitted By:

/s/ Douglas A. Robinson
**HARNESS, DICKEY & PIERCE, P.L.C.**
Douglas A. Robinson, EDMO No. 58304MO
7700 Bonhomme Ave, Suite 400
St. Louis, MO 63105
(314) 726-7500
drobinson@hdp.com

Glenn E. Forbis (*Pro Hac Vice Forthcoming*)
5445 Corporate Drive, Suite 200
Troy, MI 48098
(248) 641-1600
gforbis@hdp.com

*Attorneys for Plaintiff*
*Hunter Engineering Company*